

Thomas G. Vail
452 E. Silverado Ranch #460
Las Vegas, Nevada 89183
702-249-4538
In Proper Person

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| THOMAS G. VAIL,<br>*Plaintiff,*<br><br>Vs.<br>WARREN STEPHENS<br>STEPHENS HOLDING CO OF AR<br>STEPHENS INC., owners, STEPHENS<br>MEDIA, LLC., a corporación, LAS<br>VEGAS REVIEW JOURNAL, a<br>newspaper, John Edwards, reporter,<br>Sherman Fredrick, publisher,<br>Thomas Mitchell, editor,<br>*Defendants.* | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY DEMAND**<br><br>2:11-cv-00588-RLH -GWF |

Plaintiff, THOMAS G. VAIL, complains and alleges against Defendant(s),

And each of the alleges, alleges as follows:

### PARTIES

1. At all times relevant hereto, Plaintiff is and was a resident of Clark County, Nevada and was an insurance broker duly licensed to conduct his profession under and pursuant to the laws of the State of Nevada.

2. Defendant Stephens Inc. is the owner of Stephens Media, a subsidiary of and company, owned by Stephens Inc., with forty newspapers nationwide, including the Las Vegas Review Journal, the newspaper at issue in this lawsuit, with John Edwards, a

1

reporter, Sherman Frederick, publisher, and Thomas Mitchell, the editor, and at all times relevant hereto, was owner of a newspaper licensed to conduct its business in the State of Nevada.

## JURISDICTION

3. Federal jurisdiction is invoked under 28 USC § 1331, for federal question, in which the district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, this cause of action arises under the Digital Millennium Copyright Act Damages (DMCA), 17 USC §§1200 – 1205, and 28 USC § 1332, diversity of citizenship with Plaintiff being a citizen of the State of Nevada, and Defendant an Arkansas corporation; amount in controversy in this action is a sum in excess of $75,000; and costs.

## GENERAL ALLEGATIONS

4. February 19, 2008, Thomas Vail was arrested at his office at 2850 West Horizon Ridge Parkway in Henderson, Nevada, and booked in the Clark County Detention Center. He was charged with eight felony counts related to his activities as the owner of the Anthem Financial Group.

5. February 20, 2008, the Nevada Secretary of State published a press release stating that agents made a securities fraud arrest, stating that seniors again are targeted in a securities scam. The charges were the result of Vail's transactions with four Southern Nevada victims.

6. The Secretary of State emphasizes, in the press release, the fact that, "as in all criminal matters, the office maintains that **the allegations are merely accusations and individuals are presumed to be innocent until proven guilty in a court of law.**"

7. February 21, 2008, the Las Vegas Review Journal, with a title, **Nevada Man charged with securities fraud**, reports that the Nevada secretary of state's office reported Wednesday that it charged a Southern Nevada man with fraud related to the sale of "**fake certificates of deposits.**" The article reports that it is Thomas G. Vail, the number of felony counts, that he was an unlicensed investment adviser, involved in the fraudulent sale of securities.

8. The Las Vegas Review Journal, by and through its reporter, John Edwards, intentionally or recklessly misrepresents the Secretary of States press release by using the words "**fake certificates of deposits**" which never appears in the original press release.

9. Neither the Las Vegas Review Journal, publisher, Sherman Frederick, nor editor, Thomas Mitchell, correct the misrepresentation, nor do any of the Review Journal employees bother to refer to the **presumption of innocents, until proven guilty in a court of law**, as stated in the press release, thus being judge, jury and executioner of Mr. Vail.

10. This particular article is listed under the following names: Thomas G. Vail, Las Vegas; Thomas G. Vail, Henderson; Thomas G. Vail (*no city*); Tom Vail, Las Vegas; Tom Vail, Henderson; Tom Vail (*no city*); Thomas Vail, Las Vegas: Thomas Vail, Henderson; Thomas Vail (*no city*). For a total of nine times, with nothing left to the imagination as to who the article may be referring to. Every version of Tom's name and identity, with identifying qualifiers are included. There is no way to escape the reference to him and anywhere he may move in Vegas and the surrounding area. There may be

3

more variations of his name that are unknown to the Plaintiff; however, having the same effect.

11.     **Nevada man charged with securities fraud**, the title of the article in the Las Vegas Review Journal, is listed daily under the following, but not limited to: LVRJ.com; Newsvine.com; Digg.com; Fark.com; Mixx.com; Yahoo.com; Google.com; Delicious.com; Diigcommunity.com; MySpace.  Nine Times 20 times, equals 180 publications daily since February 21, 2008, with damages under the Digital Millennium Copyright Act Damages with fines starting at $2500 to $25,000 per day, plus attorney's fees for statutory damages, under §1202.

12.     This must be one hot topic or a lucrative article for the Journal, seeing it is run so many times per day over a three year period of time.  LVRJ must be getting advertisement or something to continue to list it by so many versions of Tom's name, and on so many search engines.

13.     Seniors are definitely the target audience for securities investing, for the government warning, and the Review Journal must be getting some type of kickback or something to run it the way and number of times they do.

14.     This is old news; however, Tom is being used by the Journal and the government, for whatever reason, pecuniary interests, or securities fraud control, yet it is Thomas G. Vail, the Plaintiff, who is paying the price for the unjust enrichment and unclean hands of Stephens Media the parent company for the LVRJ, and the owners of Stephens Inc.

15.     Key losses attributed to the article were: Midland National Life, June 2008, commission of $1.4 million, and Transamerica Life, March 2009, commission $3.5

million. Just these two cases alone cost Tom roughly $5 million, not to mention all of the little accounts.

16.     Vail has experienced both tangible and intangible losses as a result of the article, starting with a jilted girlfriend who used the article through emails, sent to Tom's clients and insurance companies, to get revenge for him marrying his current wife—the article just keeps on giving and giving—giving Tom Hell and the LVRJ, Stephens Media, and Stephens Inc., fodder of a tabloid nature, that is financially benefiting them in some way, or there would be no reason to continue to run it, on 45 search engines, 9 times daily, under every version possible of Tom's name, so readers, neighbors, investors, potential or past clients, cannot but see the allegations that are considered having the weight of a court of law, with no qualifying presumption of innocence, no hearing, no chance to rebut or deny the charges, leaving permanent damage to Tom and his family.

17.     In addition to the reputation and monetary losses, the loss of his home, cars, and other personal items and property, and is collateral damage as a result of the article, wavering between love and sacrifice of conjugal relations due to the embarrassment, the hit to lifestyle prior to the article.

18.     Thomas G. Vail's income before the article was $400,000, now, zero, with no possibility of getting a job having anything to do with finances or insurance, with the accusations of selling "fake" certificates and reference to felony charges, without the caveat or qualifier, **even the government used in their press release**—which was much gentler and truthful, representing the allegations, but giving Tom the presumption of innocence, until found otherwise, which could have taken years.

19. LVRJ has no defense to the use of the word "**fake**." There is a total disregard for the truth, indicating some type of certificate mill, making up fake certificates, much like the "fake" college diploma mills, leaving an uneducated public to surmise, just what a "fake" certificate of deposit is.

20. There is a big difference between that word and other words like "misrepresentation" or allegations of "fraud", "bait and switch." The word "**fake**" certificates connotes thoughts of counterfeit certificates, that there was no value whatsoever in the certificates, not that they were not FDIC insured or insured by an entity other than the one indicated in the advertisement, or the offer for some other certificate not as secure as the one used.

21. John Edwards was malicious, negligent, and libelous *per se*, and failed to fairly report what the Secretary of State press release said, or to use a narrow fair report of the circumstances. Edwards referred to the complete press release, but in this one instance, chose to insight, inflame, and ignite readers against Plaintiff Vail, beyond what the Secretary of State said.

22. Republication of a libel creates another libel. Every day the Journal runs the article, with a new date as late as June 20, 2010, which we have a copy of, off the Internet, along with one as late as April, 2010—having periodically run off copies and dates of the articles; it is considered "**republication**", giving rise to another separate and individual cause of action.

23. To recover in a libel or slander suit, the Plaintiff must show evidence of four elements: that the defendant conveyed a defamatory message: the material was published, meaning that it was conveyed to someone other than the Plaintiff; that the

Plaintiff could be identified as the person referred to in the defamatory material; and that the Plaintiff suffered some injury to his or her reputation as a result of the communications.

24. Tom is clearly mentioned by name, business and work address, with charges, no qualifiers for innocence, nor a chance to defend himself or make comments. The Journal had **editorial control** over the comments made by Edwards, and negligently failed to proof read or correct over a three year period of time, since the article first ran, February 21, 2008.

25. The article, overall, appeared to be warning financial advisers and seniors about Stamper and Federal Savings, who Tom, himself may have been **victimized** by, in selling the certificates, that may have been misrepresented to him by Stamper. This consideration was obliterated by insinuating that it was Tom who was the mastermind behind the **fake certificates of deposit**, not Stamper.

26. Tom, in confronting the Review Journal legal department, June 1, 2010, the date stamp was immediately dropped and two weeks later back dated in an effort to stop the statute of limitations, which is three years under the DMCA, this statute would supersede any state statute regarding limitations or tolling of the state. To stop the statute of limitations, the Las Vegas Review Journal had to follow the **republication** liability guidelines.

27. This is a classic defamation case with Tom as a private individual, not a public figure, as the legal department tried to classify Tom as, thus invoking a standard of review as malicious in nature. If Tom is a public figure it is the Journal who made him one with this article.

7

28. Before the article, no one knew who Thomas G. Vail was, limited to clients, professional associates or friends and acquaintances. As a result of the article, anyone who uses Google or uses a search engine with his name or even is researching securities, certificates or insurance will find Vail listed as the "**fraud poster boy of Nevada.**" This is not good business, nor was the article done in good faith, to reflect the nature of the charges and the press release.

## CLAIMS FOR RELIEF

29. Through a preponderance of the evidence, the standard of review for a civil action, Tom can show: (1) that the publication complained or contained a materially false statement of fact; (2) that the materially false statement of fact was **defamatory**; (3) that the materially false and defamatory statement referred to the Plaintiff; (4) that the materially false and defamatory statement was **published negligently** by the defendants; (5) that the publication of the materially false and defamatory statement was the **proximate cause** of the Plaintiff's pecuniary loss; and (6) the false and defamatory statement was **libelous** *per se* and actual injury was incurred.

WHEREFORE, Plaintiff, Thomas G. Vail, prays for judgment against Defendants and each of them on all claims for relief as follows:

1. For the sum of $222,000,000.00 for the 88,695 violations of the Digital Millennium Act, with daily damages from $2500 to $25,000, the amount to be determined as of the date of Monday, February 21, 20011 at 6:58 p.m., exactly 3 years from the date the Las Vegas Review Journal first ran the article, according to proof at time of trial, together with interest at the legal rate until judgment;

8

2.      On the claims for relief of defamation, false statement, reckless disregard for the truth, negligence, libel *per se*, and various other related torts, for punitive damages by reason of the malicious, oppressive and/or fraudulent acts of Defendants, and each of them, in such amount as will punish Defendants and as an example thereof;

3.      For reasonable attorney's fees:

4.      For costs of suit; and

5.      Such other and further relief as the Court deems just and proper.

DATED this 15 day of April, 2011.

Respectfully, submitted by:

_____
Thomas G. Vail, In Proper Person